Betty Anne BEVERS and Tom Riley, Plaintiffs,

v.

The Honorable Paul J. KILBURG, As Judge of the District Court of Iowa, In and For LINN COUNTY, SIXTH JUDICIAL DISTRICT, Defendant.

No. 67835.

Supreme Court of Iowa.

Nov. 24, 1982.

T. Todd Becker and Tom Riley, Cedar Rapids, for plaintiffs.

Timothy S. White and Douglas C. Meyer of White & Warbasse, P.C., Cedar Rapids, for defendant.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

McGIVERIN, Justice.

We granted certiorari in this contempt of court proceeding brought under Iowa Code section 598.23 and chapter 665 (1981) to determine whether there is sufficient basis and evidence to find plaintiffs in contempt. Plaintiffs claim that the district court's decree, on which the contempt citation was based, was not sufficiently clear and that there was insufficient evidence to support a finding of willful disobedience of the decree. We annul the writ of certiorari.

The alleged contempt of plaintiffs Betty Anne Bevers and her attorney, Tom Riley, arose out of a dissolution of marriage action also decided by us today. *In re Marriage of Bevers,* 326 N.W.2d 896 (Iowa 1982). The

parties in the dissolution action were Jon Ronald Bevers (Ron) and Betty Anne Bevers.

On November 10, 1981, defendant district court Judge Paul J. Kilburg filed a decree of dissolution which awarded custody of the parties' minor child, Brenda, age 9, to the father, Ron. Brenda had been living with her mother, Betty, in Denver, Colorado. Betty first learned of the decree when Ron phoned Brenda, and Betty feared that the child's father would assume custody of Brenda by a show of force. Betty contacted Tom Riley, who had not represented her at trial but agreed to represent her in any further proceedings. Since the next day was Veterans Day, Riley was unable to obtain a copy of the decree until November 12.

An attempt to get an ex parte stay order from the district court failed and on November 13 attorney Riley, on behalf of Betty, filed a written application to the court for a stay of the decree pending the outcome of post-judgment motions filed contemporaneously. On November 16 a hearing on the application was held, and defendant judge denied the stay the same day.

On November 17 Betty filed a notice of appeal from the dissolution decree and moved for a temporary stay from this court. The same day we granted a temporary stay of the custody provisions of the district court decree, pending a hearing on the motion. After hearing, on December 1, we granted the stay until the appeal was disposed of or until further order of this court.

Meanwhile, back in district court, and also on November 17, Ron applied to defendant for a rule to show cause why Betty and her attorney, Tom Riley, should not be held in contempt for failing to cause custody of Brenda to be transferred to him pursuant to the decree.

The hearing before defendant judge on the application for contempt was held on December 15. On January 4, 1982, Judge Kilburg found Betty in contempt for "avoiding the effect of the decree from November 13, 1981, until November 17, 1981." Defendant judge also found attorney Riley in contempt for "counseling" Betty or "being a party to the avoidance and frustration of the dissolution decree." The court provided that Betty and her attorney could purge themselves of contempt by filing written statements under oath, promising: by Betty, to abide by all orders of court relating to child custody; and by attorney Riley, to counsel obedience by Betty of such orders.

We granted certiorari upon the petition of Betty and attorney Riley from the contempt ruling. Iowa R.Civ.P. 306; 309.

The facts which foreshadowed this contempt proceeding are set forth in *In re Marriage of Bevers.*

The following facts appear from the contempt case record. Betty stated that her first news of the decree on November 10, 1981, was from Brenda, who tearfully told plaintiff that her father, who lives in Cedar Rapids, had just called to say that he had been awarded custody. Betty called attorney Riley, who practices in Cedar Rapids. She desired a stay of the custody order and an appeal, if necessary. Riley was unable to secure a stay on November 12, but intended to continue his efforts. When he spoke by phone with Betty that evening she expressed fears that Ron would fly to Denver and either initiate an ugly confrontation concerning custody, or if a stay were granted while he was enroute to Denver, assume custody unaware that a stay had been granted. In light of her fears, Riley agreed with Betty's suggestion that it would be in the child's best interests to accept a friend's invitation of a brief skiing trip to Breckenridge, Colorado, approximately 75 miles west of Denver. Mother and daughter left for Breckenridge that evening, Thursday, November 12. They did not return to Denver until the morning of Wednesday, November 18—a day after our temporary stay order was issued.

Betty's fears had not been imagined. Ron, aware of Betty's propensity to "run," flew to Denver and on Friday, November 13 he registered the dissolution decree in Colorado under the Uniform Child Custody Act.

He obtained a Colorado court order placing custody of Brenda in him. With two policemen in tow, Ron went first to Brenda's school and then to her residence in order to take physical custody of her. By this time, Brenda and her mother were secreted in Breckenridge and Ron was unable to find Brenda. He then caused a felony warrant to be issued against Betty and returned to Iowa.

At the hearing on the application for a stay, which was held before Judge Kilburg on Monday, November 16, Riley claimed that he had not been told *where* Betty and Brenda were going. Riley did state, however, that he would take responsibility if Brenda was absent from school on November 13 and 16. In fact, Brenda was absent from school from Friday, November 13 until noon on Wednesday, November 18.

I. *Contempt and defenses thereto.* The issue before the trial court in this contempt proceeding was whether the plaintiffs willfully failed to obey the custodial order. *In re Marriage of Welsher,* 274 N.W.2d 369, 372 (Iowa 1979). The defendant's finding of contempt is before us for review by a writ of certiorari. Certiorari is an action at law to test the legality of the action taken by a trial court or tribunal; our review is not de novo. *Lane v. Oxberger,* 224 N.W.2d 245, 247 (Iowa 1974). Generally, findings of fact are not reviewable on certiorari, but when a judgment of contempt, which is quasi criminal in nature, is challenged, we examine the evidence to ensure that proof of contempt is clear, satisfactory and convincing. *Id.*

The defenses available in a contempt proceeding are (1) indefiniteness or uncertainty of the order, *Hudson v. Jenkins,* 288 N.W.2d 566, 572 (Iowa 1980); *Lynch v. Uhlenhopp,* 248 Iowa 68, 72, 78 N.W.2d 491, 494 (1956), and (2) absence of willfulness in disobeying the order. *Callenius v. Blair,* 309 N.W.2d 415, 419 (Iowa 1981).

II. *Indefiniteness or uncertainty of order.* Plaintiffs claim that the provision of the decree awarding custody to Ron was indefinite as to *when* the change of custody should take place. The decree stated: "Therefore, the permanent care and custody of the minor child, Brenda Anne Bevers, is placed with the petitioner [Ron] subject to reasonable visitation as set out hereafter ..." Plaintiffs, however, did not act in a manner which indicated any uncertainty as to the meaning of Judge Kilburg's order. On the first court day following the filing of the decree attorney Riley phoned Judge Kilburg and sought an oral ex parte stay. The stay was not granted and that evening Riley agreed to Betty's plan to secrete Brenda at a ski resort. With Brenda in a mountain hideaway, Riley sought a stay from the district court and when this was denied he arranged for an associate to file an appeal and submit an application for a stay to us. Only after this stay had been granted, did Betty bring Brenda back down to Denver.

This series of events belies plaintiffs' contention that they were unsure as to when physical custody of Brenda was to be transferred. We conclude that the language of the dissolution decree was sufficiently clear, specific and unequivocal and that the parties were not misled as to their rights and duties. *Phillips v. District Court,* 252 Iowa 140, 145, 106 N.W.2d 68, 70 (1960).

III. *Willfullness.* Plaintiffs also contend their conduct was not in willful disobedience of the custody provision of the decree. Noncompliance with a provision in a dissolution decree must be willful to be a ground for a contempt citation. Iowa Code § 598.23 (1981). Willful noncompliance is conduct which is "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980).

The plaintiffs knew they had a duty to obey a court order: Riley has been a practicing attorney for almost thirty years, and Betty admitted that if a stay were not granted she would have to return Brenda to

Iowa. The decree gave Ron the right to physical custody of Brenda—his rights were disregarded wantonly by plaintiffs. Plaintiffs placed an obstacle in the path of enforcement of the decree by Ron. Betty spirited Brenda into the mountains with her attorney's full knowledge and cooperation, while he endeavored to obtain a stay order. Even good faith efforts to pursue further legal proceedings do not give aggrieved parties the right to flout a court order. *In re Marriage of Welsher,* 274 N.W.2d at 371–72 (if there is jurisdiction of the parties and legal authority to make an order, it must be obeyed, however erroneous or improvident).

We conclude that plaintiffs willfully obstructed the enforcement of Judge Kilburg's decree. The decree of the district court was a final and binding order when it was filed with the clerk of court on November 10, 1981. Iowa R.Civ.P. 120; *see Moreno v. Vietor,* 261 Iowa 806, 810–11, 156 N.W.2d 305, 307–08 (1968); *Aschan v. McDermott,* 164 Iowa 750, 756–57, 145 N.W.

524, 527 (1914). For whatever reasons, neither a party to the action, nor a third party shall engage in conduct which obstructs the enforcement of a court decree. *Restatement (Second) of Judgments,* § 63 (1982).[1]

We have considered all of the plaintiffs' contentions raised in this court and find them without merit.

We hold that the custody provision of the decree was sufficiently clear, definite and specific to apprise all involved parties of their rights and duties. Plaintiffs' willful actions clearly obstructed the enforcement of the decree. Therefore, we annul the writ of certiorari.

WRIT ANNULLED.

---

1. We note in passing, however, that actions such as those of Betty and Riley could perhaps be avoided if the trial court anticipates a problem in the transfer of custody. A decree could specify the date of the actual transfer of custody, taking into consideration such factors as the distance separating the parents, the time required to enroll the child in a new school, the likelihood a stay order will be sought and granted, and any other circumstances which would impact on the child's best interests. The trauma of a custody transfer on the child should be minimized, if possible.