**In the Matter of the INSPECTION OF TITAN TIRE.**

**Titan Tire Corporation, Appellant,**

v.

**Labor Commissioner of Iowa, Appellee.**

No. 00–1048.

Supreme Court of Iowa.

Dec. 19, 2001.

Brenton D. Soderstrum of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Shauna Russell Shields, Assistant Attorney General, Gail Sheridan–Lucht, Iowa Workforce Development, Division of Labor Services, for appellee.

LAVORATO, Chief Justice.

This case is a sequel to *In the Matter of the Inspection of Titan Tire*, 637 N.W.2d 122 (Iowa 2001) (*Titan I*), decided this day. Titan Tire Corporation appeals from a district court order, contending that the district court erred in failing to quash partially an administrative inspection warrant for Iowa Occupational Safety and Health Administration (IOSHA) inspectors to conduct a safety inspection at its plant. The basis for Titan's motion was that striking union representatives should not have been permitted to participate in the inspection.

Titan also contends there was not substantial evidence for the district court to find it in contempt of the court's order allowing the inspection with the participation of union representatives. Although there is no statutory right to appeal from

an order to punish for contempt, the proceedings may, in the proper case, be reviewed by certiorari. Iowa Code § 665.11 (1999). In this case, Titan filed a notice of appeal, not a writ of certiorari. We may, however, and do, proceed as though Titan sought the proper form of review. *See* Iowa R.App. P. 304.

We affirm the district court's decision in both instances.

## I. Background Facts and Proceedings.

On May 19, 2000, IOSHA received a complaint from a Titan employee. The complaint alleged violations of IOSHA health and safety standards at Titan's plant in Des Moines, Iowa. After reviewing the complaint, IOSHA representatives determined there were reasonable grounds to believe that violations existed that threatened physical harm to Titan employees. IOSHA is a bureau of the division of labor services of the department of workforce development, which enforces the federal occupational safety and health regulations. *See* Iowa Admin. Code r. 875—1.3.

In the past, Titan had refused to permit IOSHA inspectors to inspect the plant without a warrant. This prompted IOSHA to seek an administrative inspection warrant before attempting an inspection. District Judge D.J. Stovall issued the warrant. It provided that "[a] representative of the employer and an authorized employee representative shall be given the opportunity to accompany authorized representatives of the Labor Commissioner during the physical inspection of the workplace for the purpose of aiding such inspection pursuant to Iowa Code section 88.6(4) (1999)."

United Steelworkers of America Local 164 (Union) is the certified bargaining agent at the Titan plant. Employee members of the Union have been on strike

since May 1, 1998. Nevertheless, at all times material to this action, the Union had not been decertified as the exclusive bargaining agent in the plant. Because of this status, IOSHA considered the Union "the authorized employee representative" pursuant to section 88.6(4).

When IOSHA inspectors attempted to inspect the Titan plant on June 1, 2000, Titan told them that it would allow IOSHA to conduct the inspection, but the Union could not participate. Later that day, Titan filed a motion to quash the inspection warrant. The following day, IOSHA resisted the motion and filed a petition for contempt because of Titan's refusal to allow the inspection with the Union present.

District Judge Paul R. Huscher heard both actions on June 6. At the close of the hearing, Judge Huscher orally denied the motion to quash and found Titan in contempt. The judge fined Titan $500. The following day, the judge issued a written ruling incorporating his oral ruling.

We set out additional facts where relevant to the issues discussed.

## II. Issues.

The issues Titan raises are similar to several issues raised in *Titan I*. First, Titan contends the district court erred in permitting striking union representatives to accompany IOSHA inspectors during their inspection of the Titan plant.

Second, Titan challenges the district court's contempt finding, contending that its alleged violation of the court's order was not willful.

## III. Inspection Warrant—Employee Representatives.

### A. Scope of review.

▉ To the extent Titan challenges the district court's interpretation of the applicable statutes and regulations, we re-view for correction of errors at law. *Titan I*, 637 N.W.2d at 128. The issue Titan raises also involves IOSHA's interpretation of the act it is charged with enforcing. When the court interprets a statute affecting a state agency's work, it will defer to the agency's expertise unless the suggested interpretation is clearly erroneous. *Id.* We are bound by the district court's findings of fact where substantial evidence supports them. *Grinnell Mut. Reinsurance Co. v. Recker*, 561 N.W.2d 63, 68 (Iowa 1997).

### B. Parties' arguments.

Titan argues the Union is not an authorized or appropriate employee representative. It points out that the complaint in this case likely came from a current employee. Current employees, Titan further argues, are non-union and for that reason such a complainant has an interest in the inspection "directly adverse" to union members. In addition, Titan asserts, the history of violence and harassment by union workers "further proves that the Union does not have the current employees' best interest or safety in mind."

Titan also contends that Union representatives would not aid in the inspection. In support of this contention, Titan points out that the Union had been on strike for two years when IOSHA sought an inspection warrant on May 30, 2000. Therefore, according to Titan, replacement workers in the plant might have more information about machinery, operations, and possible safety hazards. In addition, Titan stresses, possible violence and harassment against replacement workers and Titan management could hamper the IOSHA inspection.

In contrast, IOSHA argues that an employer cannot dictate who the authorized employee representative will be during an IOSHA inspection; only IOSHA compli-

ance officers can resolve disputes about the authorized employee representative. IOSHA notes that the Union was the designated collective bargaining agent and had not been decertified at the time of the attempted inspection. And pursuant to the National Labor Relations Act, 29 U.S.C. § 159(a), the Union must represent the interests of all employees at Titan, regardless of an individual employees's union membership.

Finally, IOSHA argues that sufficient safeguards exist to protect against harm to Titan or its replacement workers if the Union participates in the inspection. Additionally, it points out that there had been no incidents of harassment or violence during previous inspections in which Union officials participated.

### C. Analysis.

 IOSHA has the better argument. The law is clear—striking union workers qualify as "authorized employee representatives," and are permitted to accompany IOSHA inspectors during an inspection. *Titan I,* 637 N.W.2d at 130. Titan, as the employer, cannot dictate who will be the authorized representatives to accompany IOSHA inspectors. Only IOSHA has the authority to make such decisions. *See* Iowa Code § 88.6(4) (giving an authorized employee representative the opportunity to accompany IOSHA inspectors during an inspection); Iowa Admin. Code r. 875—3.6(1) (same); Iowa Admin. Code r. 875—3.6(2) (giving IOSHA compliance officers the authority to resolve disputes over who qualifies as an authorized employee representative); IOSHA Field Inspection Reference Manual (FIRM) (defining "employee representative" as "a representative of the certified or recognized bargaining agent"); IOSHA FIRM ("unprogrammed inspections . . . will be performed during strikes or labor disputes"); *Titan I,* 637 N.W.2d at 130.

That the complainant was likely a current employee and not a striking member of the Union does not change our conclusion. The National Labor Relations Act requires that the Union must represent the interests of all Titan employees, regardless of an individual employee's union membership. *See* 29 U.S.C. § 159(a) (providing that employee representatives that have been "designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes[ ] shall be the exclusive representatives of all employees in such unit for the purposes of collective bargaining, in respect to rates of pay, wages, hours of employment, or other conditions of employment"); *see also Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44, 119 S.Ct. 292, 299–301, 142 L.Ed.2d 242, 254 (1998) (exclusive representative of employees in bargaining unit has duty to represent all employees in the unit equally and fairly).

Union officers testified that they believed their obligation was to represent all Titan employees, even non-union members who might disagree with Union officials. The Union was still the certified bargaining agent of the Titan employees. For this reason, IOSHA appropriately decided that the Union was the authorized employee representative and therefore entitled to accompany IOSHA inspectors during the inspection pursuant to section 88.6(4).

Turning to Titan's claim that the Union might disrupt the inspection with violence, we agree with IOSHA that sufficient safeguards exist to protect against possible violence. For example, Iowa Administrative Code Rule 875—3.5(4) provides that the conduct of inspections "shall be such as to preclude unreasonable disruption of the operations of the employer's establishment." Iowa Admin. Code r. 875—3.5(4); *see also Titan I,* 637 N.W.2d at 130-31. In

addition, Iowa Administrative Code Rule 875—3.6(4) permits IOSHA to "deny the right of accompaniment ... to any person whose conduct interferes with a fair and orderly inspection." Iowa Admin. Code r. 875—3.6(4); *see also Titan I*, 637 N.W.2d at 131.

Moreover, contrary to Titan's contention, the record in this case does not show that allowing Union representatives to participate in the inspection would jeopardize the safety of replacement workers and Titan management. The record evidence regarding disruptive behavior of Union members involved for the most part incidents that occurred on the picket line outside the plant. Union officials took action, removing those responsible from the picket line. The only record evidence of a Union representative's possible adverse conduct during a previous IOSHA inspection was testimony from a Titan witness that one such representative allegedly stared at replacement workers during an earlier inspection.

In contrast, IOSHA inspectors and Union officials testified that there had been no disruption or acts of violence by Union representatives during previous inspections. In fact, according to one IOSHA inspector, the only disruptive event during a previous inspection was caused by a Titan representative.

Apparently, Titan's own President and CEO was not concerned that Union representatives would provoke violence during an IOSHA inspection. Two weeks before Titan refused to permit IOSHA to inspect the Titan plant with Union representatives present, he invited a Union official to tour the plant.

Finally, the record does not support Titan's claim that Union representatives could not aid IOSHA in the inspection because of their unfamiliarity with changes to machinery since the strike began. IO-

SHA witnesses readily admitted that Titan replacement workers could aid in the inspection. However, these same witnesses and Union witnesses testified that Union representatives had extensive experience in the tire-making industry which would aid IOSHA in the inspection. As for changes in the machinery since the strike began, Union representatives testified that due to similarities in tire-making equipment, new machinery would not hamper their ability to aid the inspection.

More important, however, was testimony that Union representatives are more likely to feel free to bring issues to ISOHA's attention than replacement workers. *See* General Accounting Office (GAO/HRD–90–66BR) *Occupational Safety & Health: Options for Improving Safety and Health in the Workplace* at 44 (August 1990) (noting the difficulty in persuading employees at non-union worksites to accompany inspectors: "One reason for workers' lack of involvement may be their fear of reprisal from employers."). One IOSHA inspector testified that in a previous inspection some replacement workers were "reticent" to give her any information.

For all of these reasons, we conclude the district court did not err in denying the motion to quash. It correctly interpreted the statutes and regulations, and substantial evidence supports its ruling.

## IV. Contempt.

### A. Scope of review.

Although there is no statutory right to appeal from a contempt order, the proceeding may, in a proper case, be reviewed by certiorari. Iowa Code § 665.11; *Titan I*, 637 N.W.2d at 131. Certiorari is an action at law; therefore, our review is for correction of errors at law, not de novo. *Titan I*, 637 N.W.2d at 131. The contemnee must establish the contempt by proof beyond a reasonable doubt. *Id.* The issue

then is whether substantial evidence supports the district court's finding of contempt. *Id.* Substantial evidence is such evidence as could convince a rational fact finder that the alleged contemner is guilty beyond a reasonable doubt. *Id.*

### B. Applicable law.

Iowa Code chapter 665 is the applicable statutory provision regarding the contempt action here. In *Titan I,* we summarized the applicable law:

> Iowa Code section 665.2 lists the actions constituting contempt. The action pertinent here is "[i]llegal resistance to any order." Thus, when a contempt is alleged to involve "illegal resistance to any order," *i.e.,* a violation of a court's order, such resistance or violation must be found to be willful. "Acting contrary to a known duty may constitute willfulness for this purpose."

*Titan I,* 637 N.W.2d at 132. (citations omitted).

In the same case, we also summarized the procedure for a contempt action:

> The party requesting a contempt finding—the contemnee—has the burden of proving that the alleged violator—the contemner—(1) had a duty to obey a court order and (2) willfully failed to perform that duty. Once the contemnee has shown a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful. However, the burden of persuasion on the willfulness issue remains on the contemnee. There are two recognizable defenses available to the contemner in a contempt action: (1) indefiniteness or uncertainty of the order and (2) absence of willfulness in disobeying the order.

*Id.* (citations omitted).

### C. Analysis.

■ Titan had a duty to obey the inspection warrant issued by the district court on May 30, 2000. The warrant stated, "an authorized employee representative shall be given an opportunity to accompany authorized representatives of the Labor Commissioner during the physical inspection of the workplace for the purpose of aiding such inspection pursuant to Iowa Code section 88.6(4) (1999)." Titan's refusal to allow an IOSHA inspection with the participation of Union representatives, the authorized employee representatives designated by IOSHA, was a violation of the order. Such violation established a prima facie case of contempt.

The burden shifted to Titan to produce evidence suggesting the violation was not willful. Titan does not contend that the order was indefinite or uncertain. Therefore, Titan's only remaining defense was to produce evidence suggesting the absence of willfulness in disobeying the order.

The basis for Titan's defense that its violation of the order was not willful is two-fold. First, Titan believes it had the right to resist a warrant that it believed was void. Second, Titan argues that its actions were not willful because it disagreed with the interpretation of the warrant and disobeyed the court's order out of concern for current employees, rather than with "an evil or bad purpose."

■ Titan's argument that the warrant was void is unpersuasive. Titan does not argue that the *process* by which IOSHA obtained the warrant was flawed in some manner, for example, a lack of probable cause to issue the warrant. *See Burtch v. Zeuch,* 200 Iowa 49, 52–53, 202 N.W. 542, 543 (1925) (holding that where the process by which the search warrant was obtained was flawed or void, petitioner/defendant could not be found in contempt for resisting the warrant). Rather, Titan disagreed with IOSHA's determination that the Un-

ion would be the authorized employee representative. Such a disagreement does not excuse Titan from complying with the court's order. *See Ervin v. Iowa Dist. Ct.,* 495 N.W.2d 742, 745 (Iowa 1993) ("A contemner is not excused from complying, insofar as possible, with a court order because of personal disagreement with its practicality."); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hughes,* 557 N.W.2d 890, 892–94 (Iowa 1996) (attorney's advice to his client to ignore court's order because he questioned its validity warranted public reprimand); *Sound Storm Enterprises, Inc. v. Keefe,* 209 N.W.2d 560, 567–68 (Iowa 1973) ("[I]f merely erroneous, improvidently granted or irregularly obtained, the enjoined parties could still be punished for any attendant contemptuous behavior.").

As to Titan's second argument, the record evidence showed that Union representatives had not engaged in disruptive or violent behavior during previous IOSHA inspections conducted during the strike. Titan has simply failed to demonstrate that its refusal to permit an IOSHA inspection with striking Union representatives, due to a potential threat of violence or harassment, had any basis in fact. Moreover, one IOSHA inspector testified that IOSHA inspectors would halt the inspection and deal with disruptive behavior, if necessary, pursuant to regulations. *See* Iowa Admin. Code r. 875—3.6(4).

■ Additionally, as IOSHA points out, an "evil or bad purpose" is not the only way to show willful disobedience of a court order. *See Ervin,* 495 N.W.2d at 744. Titan's refusal to comply with the order was contrary to a known duty and for that reason constituted willful disobedience. *See Id.; Titan I,* 637 N.W.2d at 132. And, as mentioned, Titan cannot be excused from complying with an order simply because it disagrees with it.

We conclude substantial evidence supports the district court's finding that Titan was in contempt of the court's order.

## V. Disposition.

Because we conclude the district court did not err in denying the motion to quash, we affirm that ruling. Because we also conclude substantial evidence supports the district court's finding of contempt, we affirm that ruling as well.

In reaching our decision, we have carefully considered all of Titan's contentions and arguments, though we may not have addressed all of them. Those we have not addressed lack merit, are not supported by any record evidence, or have not been preserved for our review.

**AFFIRMED.**