# IN THE SUPREME COURT OF IOWA

No. 123 / 06-0194

Filed December 29, 2006

**CITY OF DUBUQUE**,

    Plaintiff,

vs.

**IOWA DISTRICT COURT FOR
DUBUQUE COUNTY**,

    Defendant.

_____

    Certiorari to the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

    A city sought writ of certiorari to challenge contempt order arising out of alleged violation of district court order. **WRIT SUSTAINED.**

    Frank Murray Smith of Frank Smith Law Office, Des Moines, and Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for plaintiff.

    Thomas Henderson, John F. Fatino, and Jeffrey D. Ewoldt of Whitfield & Eddy, P.L.C., Des Moines, for defendant.

    Thomas J. Miller, Attorney General, and Michael H. Smith, Assistant Attorney General, for amicus curiae City Development Board.

**STREIT, Justice.**

The City of Dubuque complains it has been found in contempt of a court order that did not order it to do anything. After a district court invalidated Dubuque's annexation of adjacent land and remanded the case to a state board handling such matters, the city claimed the annexation was still "in effect" and proceeded to provide services to the residents in the territory pending further review by this court. This action got Dubuque into hot water with the trial court, who found the city in contempt of the ruling annulling the annexation. We find Dubuque's actions were not in violation of the district court's order, which simply remanded the case to the City Development Board. It was error to hold Dubuque in contempt. We sustain Dubuque's writ.

## I.    Facts and Prior Proceedings

Dubuque and Asbury are involved in an acrimonious dispute over common ground both cities wish to annex. After denying Asbury's application for voluntary annexation, the City Development Board ("CDB") approved Dubuque's annexation application on July 6, 2004. Asbury appealed the CDB's decision to the district court on August 5, 2004. Asbury's petition for judicial review requested the district court to stay the implementation of the CDB's ruling and reverse the CDB's approval of Dubuque's annexation. Dubuque intervened and joined the CDB in resisting Asbury's requests. On February 8, 2005, the district court denied Asbury's request for stay.

On February 24, 2005, the CDB filed its July 6, 2004 decision approving Dubuque's annexation with the Iowa Secretary of State and

Dubuque County Recorder.[1]  Since this time, Dubuque has exercised jurisdiction over the annexation territory.

On April 20, 2005, the district court held Dubuque's annexation was invalid and remanded the case to the CDB "for action consistent with this ruling."

Following the district court's decision, the CDB took no action other than filing an appeal on May 18, 2005.  Dubuque filed its own appeal.

On May 12, 2005, Dubuque sent a letter to each of the property owners in the affected territory.  The letters stated:

> The State of Iowa City Development Board has approved the City of Dubuque's plan for annexation of approximately 704 acres west of Dubuque, which includes your property.  The Board filed its decision with the Secretary of State and the Dubuque County Recorder on February 24, 2005.  This makes the annexation territory (which includes your property) officially a part of the City of Dubuque as of February 24, 2005.

> The City of Asbury filed an appeal of the Board's decision in District Court.  Even though the District Court has disagreed with the City Development Board's approval, the annexation is still in effect, and is being reviewed by the Iowa Supreme Court.  It can take up to 18 months for an appeal to be processed through the Iowa Supreme Court.  This means that your land will continue to be part of Dubuque unless the Supreme Court decides otherwise.

---

[1]Under Iowa Code section 368.7(3) (2005), "[t]he annexation is completed when the [CDB] has filed and recorded copies of applicable portions of the proceedings as required by section 368.20, subsection 2."  Section 368.20(2) requires the CDB to:

> File with the secretary of state . . . copies of the proceedings including the original petition or plan and any amendments, the order of the board approving the petition or plan, proofs of service and publication of required notices, certification of the election result, and any other material deemed by the board to be of primary importance to the proceedings.  Upon proper filing and expiration of time for appeal, the incorporation, discontinuance, or boundary adjustment is complete.  However, if an appeal to any of the proceedings is pending, completion does not occur until the appeal is decided, unless a subsequent date is provided in the proposal.

The letter also included a schedule concerning the implementation of city services. For example, police, fire, and 911 emergency services became effective immediately. City addresses and garbage and storm water services took effect in July 2005.

On May 18, 2005, Dubuque Building Services Manager sent a letter to Mr. and Mrs. Francis McDonald which stated:

> I have been advised by the City Attorney that the City of Dubuque is considering the annexation to still be effective and the address assigned previously should be used.
>
> Your new address will be 6000 Pennsylvania Avenue, Dubuque, IA 52002. This new address will be effective July 1, 2005.

On May 31, 2005, Dubuque Public Works Director sent letters to each of the property owners in the affected territory advising them of the public work services Dubuque would be providing to the annexation area, including street maintenance and solid waste collection. The letters stated in part:

> Regarding solid water collection, we have contacted the private firms currently providing service in your area. We have notified them that the City of Dubuque will replace them and provide your solid waste collection service starting July 7th and on every Thursday thereafter. . . . The $8.70 monthly base fee is mandatory for all City single-family residences. . . .
>
> [Regarding stormwater management,] [t]he average fee for a single family household, effective July 1st, is $1.79 per month. . . .

On June 17, 2005, Asbury initiated a contempt proceeding alleging Dubuque, by exercising jurisdiction over the annexation territory after April 20, 2005, was in contempt of the district court's order. On January 30, 2006, the court found Dubuque in contempt and directed Dubuque to cease and desist providing city services to the residents in the annexed

area.  The court gave Dubuque thirty days to comply and ordered Dubuque to pay Asbury's attorney fees and costs.

On February 7, 2006, Dubuque filed this petition for writ of certiorari and request for immediate stay of the district court's January 30, 2006 contempt ruling.  This court entered an order granting certiorari and an immediate stay on February 24, 2006.

## II.    Standard of Review

Certiorari is an action at law; therefore our review is for correction of errors at law, not de novo.  *In re Inspection of Titan Tire*, 637 N.W.2d 135, 140 (Iowa 2001).

## III.    Merits

The district court found Dubuque in contempt because it unlawfully provided services to the residents in the territory that is the subject of this action.  The court said "[t]he area rightfully should revert to the auspices of the County of Dubuque for it to resume the exercise of authority over the area since the Board's decision has no legal effect." Dubuque argues the district court's earlier order invalidating the annexation did not prohibit Dubuque from exercising authority over the annexed area.  Moreover, Dubuque contends it was not required to relinquish jurisdiction over the annexed territory unless or until the CDB entered an order on remand.  Dubuque also claims the district court lacked authority to award attorney fees to Asbury.

We need not decide whether the district court was correct in holding Dubuque should not have extended services to the territory after the court found Dubuque's annexation invalid.  Even if the court was correct, Dubuque was not in contempt because the district court's original order did not impose any duties on Dubuque.  We need not

address the court's authority to award attorney fees in a contempt action.

Contempt actions are adjudicated to determine whether the alleged contemner acted in willful disobedience of a court order beyond a reasonable doubt. *French v. Iowa Dist. Ct.*, 546 N.W.2d 911, 914 (Iowa 1996) (citing *State v. Lipcamon*, 483 N.W.2d 605, 606–07 (Iowa 1992)). "'Willful disobedience' requires evidence of conduct that is intentional and deliberate with bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996) (quoting *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744 (Iowa 1993)).

The ruling by the trial court in this case did not clearly prohibit what was done by Dubuque. In the contempt order, the district court stated:

> The court has determined that the board's decision was not proper and therefore the July 2004 decision that was registered with the Secretary of State and the Dubuque County Recorder has no force and effect. The court required that the matter be remanded to the Board for "action consistent with this ruling." The ruling impliedly means the process must start over to correct the error found, i.e. coercive conduct to justify a voluntary annexation.

Even if the district court's analysis is correct, the fact remains the district court's original order was not directed at Dubuque. The only order the court made in the original order was as follows:

> IT IS THEREFORE ORDERED that the decision of the Iowa City Development Board dated July 6, 2004, is reversed and the matter is remanded for action consistent with this ruling.

This ruling attempted to restore jurisdiction in the CDB for further proceedings. It did not direct Dubuque to do or not do anything.

Therefore, Dubuque cannot be held to have violated an order which was directed at another party.

Even if we were to assume there was an implicit order directed at Dubuque, it was not so clear and unambiguous in its terms that a contempt charge could be based upon it. We said in *Hudson v. Jenkins*, 288 N.W.2d 566, 572 (Iowa 1980) (quoting 17 Am. Jur. 2d *Contempt* § 52, at 54–55 (1964)):

> Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather than implied.

In the case at hand, Dubuque's actions did not violate any terms of the district court's original order unless we read them in by implication. "We cannot, however, supply by interpretation constraints which are not expressed in [the order], especially when the result is to apply powers of the court as formidable as contempt." *Hudson*, 288 N.W.2d at 572. Thus, we find Dubuque was not in contempt of the district court's order invalidating the city's annexation. Consequently, we sustain the writ.

## IV. Conclusion

We find Dubuque was not in contempt of the district court's original order because that order was not directed at Dubuque. It was error to hold otherwise.

**WRIT SUSTAINED.**

All justices concur except Hecht and Appel, JJ., who take no part.