FILED

11/20/2020

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 4, 2020 Session

## JOHN DOE EX REL. JANE DOE v. BRENTWOOD ACADEMY, INC. ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2017-435, 2017-472    Deanna B. Johnson, Judge**

———————————————————

### No. M2017-02554-COA-R3-CV

———————————————————

In this consolidated appeal, we review whether the trial court erred in holding appellants' attorney in civil contempt and/or in assessing fees and costs after this Court, in a previous appeal, reversed the trial court's grant of appellees' motion for involuntary dismissal and mandated for entry of an order granting appellants' motion for voluntary dismissal. We conclude that there was no contempt and that the fees assessed for contempt were unwarranted. Because the underlying lawsuit was voluntarily nonsuited, we pretermit appellants' issue concerning whether the trial court erred in denying recusal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Justin Gilbert, Chattanooga, Tennessee, for the appellants, John Doe (M2017-02548), and Jane Doe (M2017-02548).

Darrell Townsend, Nashville, Tennessee, for the appellant, Justin Gilbert.

Thomas Anthony Swafford, Lucian T. Pera, Joshua Counts Cumby, Nashville, Tennessee, Tara L. Swafford and Elizabeth G. Hart, Franklin, Tennessee, for the appellees, Buddy Alexander, Nancy Brasher, Brentwood Academy, Inc., Lyle Husband, Curt Masters, and Mike Vazquez.

Elizabeth A Russell, Franklin, Tennessee, for the appellees, K.E.M., K.M., and C.M.

Edward P. Silva, Franklin, Tennessee, for the appellees, B.D., E.D., and C.D.

Philip D. Irwin and Marie T. Scott, Nashville, Tennessee, for the appellees, J.G., D.G., and R.G.

## OPINION

### I. Background

On August 4, 2017 the Doe Plaintiffs, who were originally represented by attorney Roland Mumford, filed suit in the Williamson County Circuit Court ("trial court"). The lawsuit, which alleged a sexual assault in a middle school locker room, was ultimately nonsuited, *see infra*. The case has been appealed several times, and the procedural history is rather protracted. For our purposes, we will limit the discussion to the facts and procedure that are directly relevant to the issues raised in this appeal.

On September 5, 2017, attorney Bureon Ledbetter filed a motion to appear *pro hac vice* for the plaintiffs. Mr. Ledbetter is the Does' neighbor and close friend; allegedly, he was the public face of the lawsuit and often spoke to the media concerning the case. Mr. Ledbetter is licensed in Georgia but has never been licensed to practice law in Tennessee. While Mr. Ledbetter was never paid a retainer by the Does and was never their attorney of record, he assisted their original attorney, Mr. Mumford, and later assisted Mr. Gilbert. On October 2, 2017, Appellant Justin Gilbert, a Tennessee attorney, entered a notice of appearance on behalf of the Does. Mr. Gilbert first appeared at a motions hearing on October 3, 2017, when Mr. Ledbetter's motion for admission *pro hac vice* and the defendants' motion for protective order were scheduled for hearing. Mr. Ledbetter was not present at the October 3rd hearing; however, Mr. Gilbert withdrew Mr. Ledbetter's *pro hac vice* motion, to-wit:

> THE COURT [to Mr. Gilbert]: And then to your knowledge, Ledbetter is not pursuing his pro hac vice motion?
> MR. GILBERT: Correct.
> THE COURT: Okay. So that can be stricken.
> MR. GILBERT: Yes.

Mr. Gilbert also informed the trial court that Mr. Mumford was withdrawing as plaintiffs' counsel, and Mr. Gilbert would serve in that capacity. On October 12, 2017, the trial court entered an order allowing Mr. Gilbert to proceed as plaintiffs' counsel of record.

The other motion before the trial court on October 3, 2017 was the defendants' motion for entry of a protective order. The protective order had been opposed by Messrs. Ledbetter and Mumford. On October 3, 2017, Mr. Gilbert withdrew opposition to the proposed protective order, and the trial court entered the order, which was to be the guideline for the parties' handling of sensitive documents and information generated in the case. Mr. Gilbert's alleged violation of certain provisions of the Protective Order was

the subject of the contempt proceedings filed against him, *see discussion infra*.

The parties proceeded with discovery and subpoenaed certain records from the Department of Children's Services ("DCS"), which had investigated the alleged sexual assault. After the trial court reviewed the documents *in camera*, it made them available to the parties on November 16, 2017. On November 17, 2017, Mr. Gilbert emailed copies of the DCS records to Mr. Ledbetter, who was still assisting in the Does' case.

For reasons not clear from the record, Mr. Ledbetter was listed as a potential witness for the Does. As such, the Appellees scheduled him for deposition on December 14, 2017. On the morning of December 14, 2017, defendants began their deposition of Mr. Ledbetter. Mr. Gilbert represented Mr. Ledbetter at the deposition; however, at several points in the record, Mr. Gilbert states that after the deposition, he no longer represented Mr. Ledbetter. Mr. Ledbetter refused to answer several questions on the ground of attorney-client privilege. With the deposition stymied, the parties sought the trial court's intervention, and a hearing was convened shortly after noon.

At the December 14, 2017 hearing, the trial court barred Mr. Ledbetter from participating in the case. The court also ruled that Mr. Ledbetter was not the Does' attorney and, even if he were, the Does had waived any attorney-client privilege through Mr. Ledbetter's comments to the media, to-wit:

> So it is this Court's finding that Mr. Ledbetter has behaved in such an atrocious manner that he cannot practice in this case or in front of me. To go to the media and say the things that Ledbetter said is an embarrassment to lawyers across the world. That's why we have rules. To say those sorts of things in front of the media, in this Court's ruling, disqualifies him from practicing in this case. And that includes assisting you, Mr. Gilbert, in your office, doing research. He's excluded based on his behavior, what he said in the media, and then his objections today.
>
> ***
>
> I don't think [Mr. Ledbetter] was acting as a lawyer. I think he was acting as [the Does'] neighbor, [their] friend from what it sounds like, going over there for birthdays, celebrating—bringing Christmas presents, going over there three or four times a week. . . . That is my finding, that he is their neighbor and friend and was not acting as an attorney. However, out of an abundance of caution, I'm going to give, really Ms. Doe, the benefit of the doubt and say, well, he may have been—even if he was her lawyer, he waived that privilege on her behalf. He must answer these questions. He must answer them today. I expect y'all want to take a lunch break, but he's going to have to answer these questions today. He's not

- 3 -

going to get to go through the briefs and confer. Mr. Gilbert, you and Mr. Ledbetter are not to confer. Quite frankly, I don't trust him. Any lawyer who would go to the media like that is suspect to me.

\*\*\*

So, he is not allowed to see privileged documents, the documents that are sealed or under the protective order, he's not permitted to see that. He's not permitted to work on this case.

\*\*\*

Now, as for sanctions for anyone else—let me just ask you, Mr. Gilbert, because [Mr. Ledbetter's] not here, and I know y'all need to get back at it. Will you please tell him that he'd better answer these questions or—well, today is the 24th—I mean, the 14th. If I give him ten days in jail, he'll spend Christmas Eve, but if it's more than one occasion, I can give him up to 150 days. So he better answer these questions or he will spend Christmas in jail, and maybe the deposition could be taken at the jail—or completed at the jail. But he needs to answer these questions.

The trial court went on to award fees and costs against Mr. Ledbetter as follows:

As for costs and sanctions and fees, I would like for the defense attorneys to do their bills for, of course, this hearing, as well as your time this morning at the deposition. . . . Also, Mr. Ledbetter needs to pay for time in preparing for that pro hac vice. I don't think Jane Doe . . . should pay for it. I think Mr. Ledbetter should pay it. . . . So, I'm going to sanction him the amount of money it cost to prepare for the pro hac vice motion.

In addition, the trial court ordered Jane Doe to pay "fees and costs related to the morning deposition and the hearing."

Mr. Ledbetter did not reappear for his deposition later that afternoon; instead, the Does filed a notice of nonsuit without prejudice. Shortly after three o'clock, the trial court reconvened, and defendants moved for involuntary dismissal with prejudice. The trial court granted defendants' motion for involuntary dismissal, awarded sanctions and fees, and tasked defendants, as the prevailing parties, with drafting findings of fact and conclusions of law. Specifically, in its written order of December 14, 2017, the trial court held:

- 4 -

This matter is before the Court on the Motion for involuntary dismissal pursuant to Rule 41.02 filed by Defendants. The Court finds the Motion is well-taken and hereby GRANTS the Motion. Detailed Findings of Fact and Conclusions of Law will be filed in the near future. Accordingly, this case is hereby dismissed with prejudice. Costs shall be taxed to Plaintiffs. Furthermore, Plaintiffs shall pay Defendants' attorneys' fees. Defense counsel shall submit their fee affidavits no later than January 31, 2018.

On January 3, 2018, the Does filed an amended Tennessee Rule of Appellate Procedure 3 notice of appeal (the original notice was filed on December 28, 2017), seeking review of the trial court's December 14, 2017 order granting Appellees' motion for involuntary dismissal.

Immediately following the December 14, 2017 hearing, Mr. Ledbetter allegedly spoke with the media and informed them that the trial court had granted involuntary dismissal in lieu of voluntary nonsuit. In response to Mr. Ledbetter's statements to the media, defendants sought intervention in the trial court, which reconvened on December 15, 2017. At that time, and allegedly *ex parte*, defendants discussed with the trial judge the possibility of filing contempt charges against Mr. Ledbetter. Defendants did not, however, pursue contempt charges against Mr. Ledbetter. Rather, on December 19, 2017, the trial court entered an order barring Mr. Ledbetter from the lawsuit and mandating that he return any documents related to the case that were in his possession. The December 19, 2017 order provides, in relevant part:

1. Bureon Ledbetter shall not appear as counsel in this lawsuit;
2. Bureon Ledbetter shall not assist in the prosecution of this lawsuit in any manner or confer with counsel for Plaintiffs or otherwise represent Plaintiffs;
3. Bureon Ledbetter is not permitted to see or retain documents in this matter that are subject to the Protective Order in this case; all such documents in his possession shall be turned over to the Court by Thursday, December 28, 2017 . . . .
4. Bureon Ledbetter is not permitted to speak to any media outlets about this matter due to the fact that he is no longer permitted to participate in this lawsuit . . . .

On December 28, 2017, Mr. Ledbetter sent a letter to the trial court, along with several documents. Therein, Mr. Ledbetter stated,

[w]hile I have not been privy to what documents are under a protective order I have made some assumptions as [to] what documents that are in my possession could be under some protective order. With the order preventing me from communicating with Mr. Gilbert, these assumptions

are to the best of my knowledge.

Mr. Ledbetter asked the trial court for additional time to comply with the December 19, 2017 order.

In response to Mr. Ledbetter's letter, the trial court entered an order on January 11, 2018, wherein it set a "[s]tatus [h]earing to ascertain Mr. Ledbetter's compliance with the Court's order" for January 31, 2018. The order further stated that "Plaintiff shall ensure Mr. Ledbetter's attendance at the hearing and shall ensure that Mr. Ledbetter brings to court all documents in his possession which are covered by the protective order."

The trial court convened a hearing on January 31, 2018; Mr. Ledbetter appeared and was represented by attorney Todd Sandahl. At the outset of the hearing, Mr. Sandahl explained that

> it's my understanding that [Mr. Ledbetter has] given you [all the documents] he's got. . . . He could not give me a copy of the protective order so we could review it, but he doesn't have anything else.
> I talked with Mr. Gilbert, who provided me with a copy of the [December 19, 2017] order asking [Mr. Ledbetter] to appear today . . . .

The Court asked Mr. Ledbetter whether he had seen the Protective Order, and Mr. Ledbetter responded, "I have not seen a protective order. I mean, I'm aware there was a protective order . . . ." In response to Mr. Ledbetter's testimony that he did not receive a copy of the Protective Order, counsel for the defendants stated:

> [W]hat we have established so far is that Mr. Ledbetter has never seen a protective order in this case. That is beyond imagination to me, Your Honor. We will address this at the end . . . [b]ut, Your Honor, at a minimum, we're going to ask for the Court to hold a show/cause hearing as to why Mr. Gilbert should not be held in contempt.

> \*\*\*

> If [Mr. Ledbetter's] telling us today that he hasn't seen the protective order, then Mr. Gilbert should be brought in under Paragraph 16 of that protective order. Any party designating any person as a qualified person shall have the duty to reasonably ensure that such person observes the terms of this protective order . . . .

> \*\*\*

Mr. Ledbetter has shown throughout this case that he cannot be trusted.

- 6 -

And to come in here today and say I had no notice, well Mr. Gilbert should have to answer to the Court, because your order says, plaintiff shall ensure Mr. Ledbetter's attendance at the hearing and shall ensure that Mr. Ledbetter brings to court all documents in his possession, which are covered by this protective order.

\*\*\*

[B]ut [Mr. Ledbetter] does not understand what [documents are] subject to the protective order because—let me [be] clear about this—Mr. Gilbert did not tell him about the protective order, and Mr. Ledbetter is claiming ignorance. So, I mean, this should be focused on Mr. Gilbert as well, because he has violated [the Protective] [O]rder.

The hearing continued on February 1, 2018, when Messrs. Ledbetter and Sandahl returned to court with Mr. Ledbetter's laptop computer and additional documents. The trial court ordered Mr. Sandahl to preserve and maintain the laptop because it likely contained confidential information.

As noted above, in its December 14, 2017 order granting defendants' motion for involuntary dismissal, the trial court instructed defense counsel to tender findings of fact and conclusions of law. To this end, defense counsel submitted proposed findings and conclusions on January 10, 2018. The Does opposed the proposed findings and conclusions and submitted their proposed findings and conclusions on January 12, 2018. In its February 5, 2018 order granting involuntary dismissal, the trial court adopted defendants' proposed findings of fact and conclusions of law. After outlining a litany of what the trial court referred to as "contumacious" acts on the part of Messrs. Gilbert and Ledbetter, and the Does, the trial court granted involuntary dismissal and awarded fees as follows:

Costs are taxed to Jane Doe. Jane Doe is ordered to pay all fees and expenses of all Defendants in this lawsuit, with the exception that the fees for the afternoon meeting with the Court on December 7, 2017, are to be paid by Mr. Gilbert, and the fees of defense counsel in responding to Mr. Ledbetter's pro hac vice motion are to be paid by Mr. Ledbetter. Defense counsel shall submit their fee affidavits no later than February 15, 2018.

On February 7, 2018, Mr. Gilbert filed the trial court's February 5, 2018 order with this Court. By order of February 16, 2018, this Court reversed the trial court's December 14, 2017 order granting involuntary dismissal and its February 5, 2018 order, which contained the trial court's findings of fact and conclusions of law concerning its grant of the involuntary dismissal and award of fees and costs. Specifically, this Court's February 16, 2018 order states, in relevant part:

[T]he determinative issue is whether the trial court erred in dismissing the case with prejudice after the plaintiffs had filed a written notice of voluntary dismissal under Tenn. R. Civ. P. 41.01. We conclude the trial court should have dismissed the case without prejudice.

\*\*\*

Because the trial court stated that it considered the plaintiff's decision to file a nonsuit contumacious, we find it appropriate to note that the filing of the nonsuit was neither contumacious nor an affront to the trial court. It is an option the rules provide to a plaintiff when faced with an unfavorable ruling.

As to any procedural issues, Tenn. R. Civ. P. 41.01 requires only that the plaintiff file a written notice of dismissal and serve a copy on all parties. Tenn. R. Civ. P. 41.01 does not require the filing of a proposed order, and a local rule cannot supersede a Tennessee Rule of Civil Procedure. Likewise, Tenn. R. Civ. P. 41.01 does not require that the other parties actually receive their service copy before the filing is effective. Thus the voluntary nonsuit without prejudice was effective when the plaintiffs filed the notice, together with the certificate of service. As a consequence, the defendants' motion to dismiss and the trial court's order granting the defendants' motion, which were both after the nonsuit, have no legal effect. Once the nonsuit was filed, the only thing left to do was the ministerial act of entering the order of dismissal without prejudice.

\*\*\*

The trial court's December 14, 2017 and February 5, 2018 orders dismissing the case with prejudice are reversed. The case is remanded to the trial court with instructions to enter an order dismissing the case without prejudice under Tenn. R. Civ. P. 41.01. The costs are taxed to the defendants for which execution may issue.

The defendants filed a petition for writ of certiorari in the Tennessee Supreme Court seeking review of this Court's decision to reverse the trial court's grant of the motion for involuntary dismissal and its mandate for entry of voluntary dismissal. The Tennessee Supreme Court ultimately denied hearing. However, while the writ of certiorari was pending, on February 7, 2018, the trial court ordered Mr. Gilbert to show cause why he should not be held in contempt for violating the Protective Order, as well as the court's January 11, 2018 order setting the January 31, 2018 hearing. The February 7, 2018 show cause order provides, in relevant part:

The Court's January 11 Order required two things of Plaintiffs' counsel, namely, to ensure:

> 1. Mr. Ledbetter's attendance at the January 31 Status Hearing; and
> 2. that Mr. Ledbetter bring to Court on January 31 all documents in Mr. Ledbetter's possession covered by the Protective Order.

Mr. Gilbert was not present at either the January 31 or February 1 hearing and Mr. Ledbetter testified under oath that Mr. Gilbert did not make him (Mr. Ledbetter) aware that the Court had ordered Mr. Ledbetter to appear before the Court on January 31. Mr. Ledbetter's sworn testimony is that he was unaware of the January 11 Order requiring him to appear on January 31 until Monday, January 29 when a friend of Mr. Ledbetter's reviewed the docket and called Mr. Ledbetter to inform him of the January 31 Status Conference.

Mr. Ledbetter also testified under oath on January 31 that he received the DCS records (and potentially other documents protected from disclosure by the Court's Protective Order in this case) without ever having read, or even seen, the Court's Protective Order. In Mr. Ledbetter's December 28 letter to the Court requesting more time to turn over all protected documents, he represented to the Court he was having difficulty determining which documents in his possession are covered by the Protective Order because he has never seen a copy of this Court's Protective Order.

If Mr. Ledbetter's sworn testimony is to be believed, it appears Plaintiffs' counsel, Justin Gilbert, may have violated the Court's Protective Order by, *inter alia*, distributing protected discovery documentation to a third party who is not a "Qualified Person" entitled to receive the documents pursuant to the terms of the Protective Order. It further appears Mr. Gilbert may have violated the Protective Order by the production of protected and confidential information to Mr. Ledbetter without advising Mr. Ledbetter about the existence and terms of the Protective Order as required by paragraph 16 of the Protective Order.

Accordingly, Justin Gilbert is hereby ordered to appear before this Court . . . to show cause why he should not be held in contempt for failing to comply with the Court's Protective Order and January 11 Order by:

> (a) failing to ensure Mr. Ledbetter's attendance at this Court's status conference on January 31, 2018 as set forth in the Court's January 11 Order;

(b) failing to ensure that Mr. Ledbetter brought with him to the January 31 Status Conference all documents in his (Mr. Ledbetter's) possession which are covered by the Protective Order;

(c) producing documents subject to the Court's Protective Order to an individual not entitled to receive said documentation as a "Qualified Person" as defined in Paragraphs 5 and 7(a) of the Protective Order;

(d) providing to Mr. Ledbetter copies of documents subject to the Protective Order without providing to Mr. Ledbetter a copy of the Protective Order, explaining to Mr. Ledbetter his obligation to follow the terms of the Protective Order, and failing to secure the signature of Mr. Ledbetter on a statement in the form attached as Exhibit "A" to the Protective Order;

(e) failing to retain copies of Confidential Information in the offices of outside counsel for the receiving party (Mr. Gilbert);

(f) failing to maintain a log of all copies of Confidential Information delivered to a Qualified Person; and/or

(g) failing to comply with his duty to reasonably ensure that any Qualified Person in receipt of confidential information subject to the Protective Order observes the terms of the Protective Order.

As referenced in the show cause order and discussed in further detail below, the Protective Order provides, at paragraph 7(a), that information designated as confidential "shall not be disclosed or made available by the receiving party to persons other than Qualified Persons." As set out at paragraphs 5(d) and (f) of the Protective Order, "Qualified Persons" include retained counsel and "litigation vendors, court reporters, and other litigation support personnel." At paragraphs 7(c) and 16, the protective order also provides that counsel "shall maintain a log of all copies of Confidential Information that are delivered to Qualified Persons," and that "[a]ny party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order." Finally, at paragraph 17, the Protective Order provides that, "Violation by any person or parties of any provision of th[e] Protective Order shall be punishable by contempt of Court."

On February 22, 2018, the Does and Mr. Gilbert filed a joint motion, under Tennessee Supreme Court Rule 10B, seeking recusal of the trial judge. By order of March 20, 2018, the trial court denied recusal. On April 11, 2018, the Does and Mr. Gilbert filed a joint petition in this Court for recusal appeal under Tennessee Supreme Court Rule 10B. In *Doe by Doe v. Brentwood Acad. Inc*., No. M2018-00668-COA-

T10B-CV, 2018 WL 2282605 (Tenn. Ct. App. May 18, 2018), this Court dismissed the 10B appeal as untimely. However, we did not preclude the Appellants from appealing the denial of recusal via Tennessee Rule of Appellate Procedure 3 after entry of a final judgment in the case.

With the Tennessee Supreme Court's denial of certiorari concerning our February 16, 2018 order reversing the trial court's grant of involuntary dismissal, the trial court entered an order granting voluntary dismissal on June 21, 2018. The trial court's order states, in its entirety:

> Pursuant to Tennessee Rule of Civil Procedure 41.01, and the notice from the Plaintiffs, this matter is hereby dismissed without prejudice, with costs of court taxed to the plaintiffs. SO ORDERED.

On the same day, i.e., June 21, 2018, Appellees filed a Tennessee Rule of Civil Procedure 54.04(2) motion for discretionary costs, wherein they asked for "imposition of discretionary costs in the amount of $2,045.80 from Plaintiff Jane Doe . . . ." On the same day, defendants J.G., D.G. and R.G. filed a separate motion for discretionary costs, seeking $1,515.80 in discretionary costs (i.e., "Deposition Transcript of Harriett Ledbetter $798.55; Deposition Per Diem-Harriett Ledbetter/ Deposition Transcript of Bureon Ledbetter $717.25"). By order of July 12, 2018, the trial court awarded Appellees discretionary costs in the amount of $2,045.80. By order of July 13, 2018, the trial court awarded defendants J.G., D.G., and R.G. discretionary costs in the amount of $1,515.80. No appeal is taken from the award of discretionary fees. Rather, Appellants appeal the trial court's June 21, 2018 "Order Awarding Defendants' Attorney Fees," wherein it awarded defendants fees against Mr. Ledbetter in the total amount of $25,718.22 and against Jane Doe in the total amount of $9,085.00. *See discussion infra.*

On June 25, 2018, the Does and Mr. Gilbert filed a joint Tennessee Rule of Appellate Procedure 3 notice of appeal, wherein they sought review of the trial court's March 20, 2018 order denying recusal. Because this Court had previously dismissed Appellants' Tennessee Supreme Court Rule 10B appeal, *see discussion supra*, defendants moved for dismissal of the Rule 3 appeal. By order of July 29, 2018, this Court determined that Appellants' Rule 3 appeal, No. M2017-02554-COA-R3-CV, was premature. However, rather than dismissing the appeal, we held that the notice of appeal would be treated as filed as of the date the trial court entered a final order resolving all issues.

On August 16, 17, and October 5, 2018, the trial court convened a show-cause hearing concerning Mr. Gilbert's alleged contempt. Mr. Gilbert was the sole witness, and there was no countervailing evidence adduced to refute his testimony. By order of October 15, 2018, the trial court found Mr. Gilbert in contempt for violating its orders. We will discuss the trial court's specific findings below. In late January 2019, defendants

submitted fee affidavits related to the contempt proceedings, and, on January 31, 2019, the trial court entered an order awarding defendants $138,728.50 in fees to be paid by Mr. Gilbert.

On October 29, 2018, Mr. Gilbert filed a petition for Tennessee Rule of Appellate Procedure 10 extraordinary appeal, seeking review of the trial court's October 15, 2018 order holding him in contempt. By order of November 20, 2018, this Court granted Mr. Gilbert's petition for Rule 10 appeal. On February 15, 2019, Mr. Gilbert filed a motion seeking consolidation of his Rule 10 appeal with the pending Rule 3 appeal. By order of February 21, 2019, this Court granted the motion for consolidation.

## II. Issues

Mr. Gilbert raises three issues for review:

1) Sanctions and Costs. After this Court of Appeals' reversal of February 16, 2018, did the trial court err in awarding $25,000 in attorney's fees against attorney Bureon Ledbetter for a *pro hac vice* motion which was voluntarily struck by the plaintiffs and never heard? Similarly, did the trial court err in awarding attorneys' fees against Jane Doe for the taking of Mr. Ledbetter's deposition, along with discretionary costs?

2) Contempt. After this Court of Appeals' reversal of February 16, 2018, did the trial court err in holding plaintiff's attorney Justin Gilbert in civil contempt and assessing [$138,728.50] in defense attorney fees against Mr. Gilbert?

3) Recusal: Would an objective observer reasonably question the impartiality of the trial judge, so that recusal is warranted, based upon the following events: The judge's tolerance of socio-economic status arguments against a lawyer; her refusal to acknowledge established law that a non-suit is not an act of "bad faith" against the trial court; her holding ex parte hearings with defense attorneys on the subject of putting a lawyer in jail for criminal contempt; and her wholesale adoption of Rule 11 and "bad faith" findings against lawyers, written for her by defense attorneys, without any notice or hearing?

## III. Standard of Review

This case was tried without a jury. We review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 731 (Tenn. 2005). The trial court's conclusions of law, however, are reviewed *de novo* and

"are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

### IV. Fees Assessed Against Bureon Ledbetter and Jane Doe

As discussed above, on June 21, 2018, the trial court complied with our mandate and entered its order granting Appellants' motion for voluntary dismissal. On the same day, i.e., June 21, 2018, the trial court entered an "Order Awarding Defendants' Attorney Fees," which is the subject of the instant appeal. The order provides:

> On December 14, 2017, this Court ordered Bureon Ledbetter to pay the fees incurred by Defendants relating to Defendants' preparation of the opposition to Mr. Ledbetter's Motion for *Pro Hac Vice* Admission. The Court also ordered Plaintiff Jane Doe to pay the fees incurred by Defendants relating to the deposition of Bureon Ledbetter and the hearing before the Court regarding Mr. Ledbetter's refusal to answer questions posed to him in his deposition. Th[e] basis for these fee awards was thoroughly explained by the Court on December 14, 2017 and was reiterated in the Sealed Memorandum and Order from this Court dated February 5, 2018, which attached the transcript from December 14, 2017. On February 18, 2018, counsel for Defendants submitted affidavits attesting to their fees related to each of these events. Plaintiffs did not submit any objection to these fees. The Court has reviewed the affidavits and finds the fees to be reasonable for the level of experience of each of the attorneys in this matter and to be a reasonable amount of time for the required tasks. Accordingly,
>
> The Court orders that the following fees related to the Motion for *Pro Hac Vice* Admission be paid by Bureon Ledbetter:
>
> a. To Defendants Brentwood Academy, Curtis G. Masters, Nancy Brasher, Buddy Alexander, Lyle Husband and Mike Vazquez: $12,180.50
> b. To Defendants BD, ED & CD: $1,600.00
> c. To Defendants JG, DG and RG: $3,775.00
> d. To Defendants, KM1, KM2 and CM: $8,162.72.
>
> These awards are taxed against Mr. Ledbetter for which execution may issue if necessary, and for which statutory interest is permissible.
>
> The Court further orders that the following fees related to Bureon Ledbetter's deposition be paid by Jane Doe.
>
> a. To Defendants Brentwood Academy, Curtis G. Masters, Nancy Brasher, Buddy Alexander, Lyle Husband and Mike Vazquez: $3,822.50

b.  To Defendants BD, ED & CD: $2,200.00
c.  To Defendants JG, DG and RG: $1,550.00
d.  To Defendants, KM1, KM2 and CM: $1,512.50.

These awards are taxed against Jane Doe for which execution may issue if necessary, and for which statutory interest is permissible.

As an initial matter, we note that Bureon Ledbetter is not a party to this appeal. He did not file a notice of appeal and did not brief the question of the fees awarded against him in the foregoing order. Because we do not reach the question of the propriety of the trial court's award of $25,718.22 against Mr. Ledbetter, we leave that portion of the July 21, 2018 order undisturbed.

Turning to the $9,085.00 in fees assessed against Jane Doe, as discussed above, by order of February 5, 2017, the trial court denied plaintiffs' motion for voluntary dismissal and, instead, granted defendants' motion for involuntary dismissal. In connection with the grant of the involuntary dismissal, the trial court awarded fees and expenses against Jane Doe. As set out in the trial court's February 5, 2017 order:

Based on the foregoing Findings of Fact and Conclusions of Law, it is therefore ordered that Defendants' Motion to Dismiss this case with prejudice is GRANTED. Therefore, Plaintiffs' case is dismissed with prejudice. Costs are taxed to Jane Doe. Jane Doe is ordered to pay all fees and expenses of all Defendants in this lawsuit. . . . Defense counsel shall submit their fee affidavits no later than February 15, 2018.

The trial court's award of fees against Ms. Doe was based, *inter alia*, on its determination that the plaintiffs' voluntary nonsuit was a contumacious filing. In our order of February 16, 2018, *supra*, this Court held that, "The trial court's December 14, 2017 and February 5, 2018 orders dismissing the case with prejudice are reversed." In so ruling, we noted that, "Because the trial court stated that it considered the plaintiff's decision to file a nonsuit contumacious, we find it appropriate to note that the filing of the nonsuit was neither contumacious nor an affront to the trial court."

Following our reversal of the trial court's February 5, 2018 order, defense counsel proceeded to tender their respective fee affidavits (as requested in the trial court's February 5, 2018 order), and the trial court granted those fees by order of June 21, 2018, *supra.* As set out in context above, the trial court's order states that, "Th[e] basis for these fee awards was thoroughly explained by the Court on December 14, 2017 and was reiterated in the Sealed Memorandum and Order from this Court dated February 5, 2018, which attached the transcript from December 14, 2017." The June 21, 2018 order indicates no alternative basis for the award of fees against Ms. Doe. As such, it is clear that the trial court relied solely on its previous orders, i.e., the February 5, 2018 and

December 14, 2017 orders, in awarding $9,085.00 in fees against Ms. Doe. The problem, however, is that this Court reversed those orders on February 16, 2018. As explained in 5 C.J.S. Appeal and Error §1127, "[a]n order, judgment, or proceeding dependent on, or ancillary and accessory to, a judgment, order, or decree which is reversed or vacated falls with it." *See also* **Williams Production Mid-Continent Co. v. Patton Prod. Corp**, 277 P.3d 499, 501 (Ok. Ct. App. 2012) ("we hold a second judgment predicated on a prior judgment later reversed cannot stand.") (citing 18A Fed. Prac. & Proc. Juris. § 4433 (2d ed.) (warning "against the grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment.")). Because the trial court's June 21, 2018 order awarding fees against Ms. Doe is predicated and dependent on the trial court's December 14, 2017 and February 5, 2018 orders, both of which this Court reversed, we reverse the trial court's award of $9,085.00 in fees against Ms. Doe.

## V. Contempt and Award of Attorney's Fees against Mr. Gilbert

As set out in its October 15, 2018 order, the trial court found Mr. Gilbert "in civil contempt on all six counts or allegations" set out in the show cause order, *supra*. We will address the six counts of contempt below, but we first review the criteria for a finding of civil contempt. As recently explained by this Court:

> "Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce his or her rights under the order that has been violated." **Reed v. Hamilton**, 39 S.W.3d 115, 117-18 (Tenn. Ct. App. 2000). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of his or her rights." **Id.** at 118. In general, the Tennessee Supreme Court has enumerated four essential elements of civil contempt claims based upon an alleged disobedience of a court order:
>
> (1) the order alleged to have been violated must be "lawful;"
> (2) the order alleged to have been violated must be clear, specific, and unambiguous;
> (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and
> (4) the person's violation of the order must be "willful."
>
> **Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.**, 249 S.W.3d 346, 354-55 (Tenn. 2008). Findings of civil contempt are reviewed under an abuse of discretion standard. **Id.** at 358. We review the trial court's factual findings of civil contempt with a presumption of correctness unless the evidence preponderates otherwise pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure. **Id.** at 357.

***Barmmer v. Staininger***, No. E2018-02058-COA-R3-CV, 2019 WL 3886444, \*2-\*3 (Tenn. Ct. App. Aug. 19, 2019), *perm. app. denied* (Tenn. Jan. 16, 2020). In ***Konvalinka***, the Tennessee Supreme Court explained:

> Tenn. Code Ann. § 16-1-103 (1994) currently provides that "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." To give effect to this power, Tenn. Code Ann. §§ 29-9-101 to –108 (2000) further define the scope of the contempt power and the punishment and remedies for contemptuous acts. Of particular relevance to this case, Tenn. Code Ann. § 29-9-102(3) specifically empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." This provision enables the courts to maintain the integrity of their orders. ***Wilson v. Wilson***, 984 S.W.2d 898, 904 (Tenn.1998); ***Thigpen v. Thigpen***, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993); ***State v. Sammons***, 656 S.W.2d 862, 869 (Tenn. Crim. App. 1982).

***Konvalinka***, 249 S.W.3d at 354 (footnotes omitted).

Here, there is no dispute that the subject orders, i.e., the Protective Order and the January 11, 2018 order, were lawful and unambiguous. Rather, Mr. Gilbert's argument hinges on his contention that he did not violate either order. As explained by this Court:

> The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See* ***Pass v. State***, 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); ***Sherrod v. Wix***, 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. ***Doe v. Bd. of Prof'l Responsibility***, 104 S.W.3d [465,] at 474 [(Tenn. 2003)]. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

***Lattimore v. Lattimore***, No. M2018-00557-COA-R3-CV, 2019 WL 1579846, \*6 (Tenn. Ct. App. April 12, 2019).

To the extent our analysis requires interpretation of the trial court's orders, we are guided by the familiar principles as explained by the Tennessee Supreme Court:

Orders, like other written instruments, should be enforced according to their plain meaning. *See Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Thus, courts called upon to interpret orders should construe the language in the order in light of its usual, natural, and ordinary meaning. *See Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). If the language in an order is clear, then the literal meaning of the language in the order controls. *See Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005). Litigants are entitled to rely on the reasonable interpretation of orders, and the use of the "plain and ordinary meaning" standard to interpret orders assures that litigants will be treated fairly. *See Turman v. Boleman*, 235 Ga. App. 243, 510 S.E.2d 532, 534 (1998); *Campen v. Featherstone*, 150 N.C. App. 692, 564 S.E.2d 616, 619 (2002); *see also State v. Phillips*, 138 S.W.3d at 229-30.

*Konvalinka*, 249 S.W.3d at 359. With the foregoing in mind, we turn to the trial court's specific findings of contempt.

### 1. Mr. Gilbert's failure to ensure Mr. Ledbetter's attendance at the January 31, 2018 hearing in violation of the trial court's January 11 Order

Concerning this count of contempt, in its October 15, 2018 order, the trial court held:

> Mr. Ledbetter testified that Mr. Gilbert never told him (Ledbetter) about the January 31, 2018 status conference. Instead, a friend told Mr. Ledbetter about the hearing after she saw it on the docket. This was a clear and unambiguous lawful order. Mr. Gilbert willfully disobeyed this order. Thus, Mr. Gilbert is in contempt for violating the Court's January 11, 2018 Order.

The trial court's January 11, 2018 order provides that, "**Plaintiff** shall ensure Mr. Ledbetter's attendance at the [January 31, 2018] hearing . . .;" it does not direct Mr. Gilbert to ensure Mr. Ledbetter's attendance at the hearing. Regardless, Mr. Ledbetter did, in fact, attend the January 31, 2018 hearing. Despite Mr. Ledbetter's attendance, the trial court found Mr. Gilbert in contempt because Mr. Gilbert did not personally ensure Mr. Ledbetter's attendance. The trial court's reasoning is flawed in several regards. First, as noted above, the order does not direct Mr. Gilbert to ensure Mr. Ledbetter's attendance. Next, in its December 19, 2017 order barring Mr. Ledbetter from the lawsuit, the trial court specifically instructed that, "Bureon Ledbetter shall not . . . confer with counsel for Plaintiffs . . . ." So, had Mr. Gilbert made direct contact with Mr. Ledbetter regarding his attendance at the January 31, 2018 hearing, he likely would have been in

contempt of the December 19 order. Faced with the dilemma of either violating the December 19 order or the January 11 order, Mr. Gilbert contacted Todd Sandahl, Mr. Ledbetter's attorney, regarding the order requiring Mr. Ledbetter's attendance. At the January 31, 2018 hearing, Mr. Sandahl informed the court that he "talked to Mr. Gilbert, who provided [Mr. Sandahl] with a copy of the order asking [Mr. Ledbetter] to appear today." From Mr. Sandahl's comments, it is clear that Mr. Gilbert did, in fact, ensure Mr. Ledbetter's attendance at the January 31 hearing while, at the same time, honoring the December 19 order to refrain from conferring directly with Mr. Ledbetter. As such, there is no contempt on this count.

### 2. Failing to ensure that Mr. Ledbetter brought with him to the January 31 hearing all documents in Mr. Ledbetter's possession, which are covered by the Protective Order

Concerning this count of contempt, the trial court held that

Mr. Ledbetter testified in open court that he had never even seen a Protective Order and his attorney verified that there was no Protective Order in his file. . . . [T]he Court has made a finding that Mr. Gilbert never gave Mr. Ledbetter a copy of the Protective Order. Furthermore, when he learned of the January 11, 2018 Order, Mr. Gilbert did not give Mr. Ledbetter a copy of the Protective Order so that he (Ledbetter) could follow the Order and bring the documents to Court. Finally, Mr. Gilbert never gave Mr. Sandahl, Mr. Ledbetter's attorney, a copy of the Protective Order so that he (Sandahl) could ensure that his client brought the documents to Court. The Order was lawful and clear and unambiguous. Mr. Gilbert's disobedience of this Order was willful. Accordingly, Mr. Gilbert is in contempt for violating this portion of the January 11, 2018 Order.

The January 11, 2018 order provides that, "**Plaintiff** shall ensure . . . that Mr. Ledbetter brings to court all documents in his possession which are covered by the Protective Order." Again, the trial court's order is directed to Plaintiff, not to Mr. Gilbert. Nonetheless, as discussed above, Mr. Gilbert ensured that Mr. Ledbetter's attorney, Mr. Sandahl, was in receipt of the January 11, 2018 order, which mandated that his client bring the relevant documents to court. Importantly, at the January 31, 2018 hearing, Mr. Ledbetter testified that he had returned all of the documents he obtained from Mr. Gilbert, to-wit:

So, I've given you not the hard copy that DCS produced but a copy of those documents. And that's all I have, which came to me via e-mail. As I understand it, when they came in to Mr. Gilbert, then I received a scanned copy of those in working with him on that case. That's what I returned to you was the scanned copies of what he received from DCS.

The gravamen of the contempt proceedings against Mr. Gilbert is that he released certain documents to Mr. Ledbetter that were allegedly subject to the Protective Order. Under the Protective Order, Mr. Gilbert was only responsible for documents he distributed to Mr. Ledbetter, not other documents in Mr. Ledbetter's possession, i.e., documents Mr. Ledbetter received prior to Mr. Gilbert filing his notice of appearance. Mr. Gilbert did not appear in this matter until October 2, 2017, but Mr. Ledbetter was assisting plaintiffs' former attorney, Mr. Mumford, prior to that time. Nonetheless, at the hearing, Mr. Ledbetter testified that he returned all copies of the documents he received from Mr. Gilbert, and the record is void of any proof contradicting this testimony. Thus, the goal of the January 11, 2018 order, i.e., return of protected documents provided by Mr. Gilbert, was satisfied. As such, there is no contempt on this count.

### 3. Producing documents subject to the Court's Protective Order to an individual not entitled to receive said documentation as a "Qualified Person" as defined in Paragraphs 5 and 7(a) of the Protective Order

The October 3, 2017 Protective Order provides that documents contemplated thereunder shall only be released to "qualified persons," whom the order defines, in relevant part, as: (1) "retained counsel for the parties in this litigation and their respective staff;" (2) "independent experts or independent consultants . . . engaged in connection with this litigation . . .;" and (3) "litigation support personnel." The trial court found Mr. Gilbert in contempt of the Protective Order because he tendered protected documents to Mr. Ledbetter, who the court concluded was not a "qualified person[]." Specifically, the court held that:

> Section 5(d) of the Protective Order includes as a "qualified person" "retained counsel for the parties in this litigation and their respective staff." Mr. Gilbert takes the position that Mr. Ledbetter falls under this category. However, the proof before the Court shows otherwise. Mr. Ledbetter was not "retained counsel." Mr. Ledbetter did not have a retainer agreement with the Does and the Does did not pay Mr. Ledbetter a retainer. In addition, Mr. Ledbetter did not give the Does legal advice; he merely served as a counselor because he was the Does' neighbor. Mr. Ledbetter did not perform legal research, draft pleadings, or make argument before the Court.
> Moreover, Mr. Ledbetter was not "staff." He did not [date] stamp documents, copy documents, or work in any other way for Mr. Gilbert as "staff." Furthermore, Mr. Gilbert did not pay Mr. Ledbetter. Thus, he was not "staff."
> Section 5(f) includes "other litigation support personnel" as "qualified persons." However, for the same reasons indicated in the previous paragraph, Mr. Ledbetter was not "litigation support personnel."
> For these reasons, the court finds that . . . Mr. Gilbert violated [the

Protective Order] by providing the DCS records to Mr. Ledbetter.

It is undisputed that Mr. Ledbetter is a licensed attorney in good standing in Georgia, and there is no evidence in the record to the contrary. Tennessee Rule of Professional Conduct 5.5(c) provides that

> (c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;

Comment 8 to this Rule explains:

> Paragraph (c)(1) recognizes that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in this jurisdiction. For this paragraph to apply, however, the lawyer admitted to practice in this jurisdiction must actively participate in and share responsibility for the representation of the client.

It is also undisputed that Mr. Gilbert is duly licensed to practice in Tennessee, was retained by the Does, and actively participated in their representation. Concerning Mr. Ledbetter's role in the case, at the August 16, 2018 hearing on the show cause for contempt, Mr. Gilbert testified, in relevant part:

> Q. Qualified persons are also defined as litigation vendors, court reporters, and other litigation support personnel. Is "litigation support personnel" defined in this protective order?
> A. (Viewing document.) Not that I see, no.
> Q. Did Mr. Ledbetter provide to you litigation support?
> A. Yes, he did, yes. Very much so, in terms of communicating with the clients and being a liaison to me.

Indeed, Mr. Ledbetter was assisting Mr. Mumford in this case before Mr. Gilbert was retained, and it appears from the record that defendants did not object to his participation until after the dispute over Mr. Ledbetter's deposition and the entry of the voluntary nonsuit. Regardless of the suspect timing of defendants' objection to Mr. Ledbetter seeing protected documents, the evidence supports a finding that Mr. Ledbetter was engaged in the lawsuit under Rule 5.5(c)(1), *supra*, and was assisting Mr. Gilbert in aid of his representation of the Does, just as he had for Mr. Mumford from the outset of the lawsuit.

The trial court makes much of the fact that Mr. Ledbetter received no compensation from the Does or Mr. Gilbert; however, we find nothing in the rules to suggest that compensation is a requirement for an attorney licensed in another jurisdiction to provide legal services on a temporary basis in association with a Tennessee attorney, who is an active participant in the client's representation. Here, the Rule 5.5(c)(1) criteria are met. Mr. Ledbetter is licensed and in good standing in Georgia. Mr. Gilbert is licensed and in good standing in Tennessee, and he is actively engaged in representing the Does. Under Rule 5.5 (c)(1), Mr. Ledbetter may provide legal services to Mr. Gilbert in connection with this case.

The Protective Order does not define the type or extent of "litigation support" that "litigation support personnel" must provide to qualify as a "qualified person[]" under Paragraph 5(f) of the Protective Order. As such, there is no basis for the trial court's holding that the fact that Mr. Ledbetter did not "stamp documents, copy documents," or receive compensation for his work results in his being unqualified to receive protected documents under the Protective Order. Rather, the evidence weighs in favor of a finding that Mr. Ledbetter served as litigation support personnel for Mr. Gilbert within the scope of the Rules of Professional Conduct and was, thus, a qualified person under the Protective Order. As such, there is no basis for contempt on this count.

**4. Providing to Mr. Ledbetter copies of documents subject to the Protective Order without providing to Mr. Ledbetter a copy of the Protective Order, explaining to Mr. Ledbetter his obligation to follow the terms of the Protective Order, and failing to secure the signature of Mr. Ledbetter on a statement in the form attached as Exhibit "A" to the Protective Order**

At Paragraph 5(e), the Protective Order provides that, if protected documents are tendered to qualified persons, who are "actual independent experts or independent consultants, . . . prior to the disclosure [,]. . . [,] counsel for the party making the disclosure shall deliver a copy of this Protective Order to such person, shall explain that such person is bound to follow the terms of such Order, and shall secure the signature of such person on a statement in the form attached [to the Protective Order as Exhibit A]." Under the plain language of the order, the requirements to deliver the Protective Order and to execute Exhibit A apply only to "independent experts or independent consultants."

In the first instance, we note that the trial court held that Mr. Ledbetter was not a "qualified person" under any of the definitions set out in the Protective Order. Yet, the trial court held Mr. Gilbert in contempt for failing to comply with the peripheral requirements pertaining to qualified individuals, who are independent experts or consultants. Despite this flaw in logic, as discussed above, Mr. Ledbetter qualifies as "litigation support personnel" under Rule 5.5(c)(1). By his own testimony at the January 31, 2018 hearing, Mr. Ledbetter explained that he "was not that involved in the pleadings and so forth. My role was to help find documents that would support pleadings." From

the proof, Mr. Ledbetter was not involved in providing substantive consultation on the legal aspects of the case. As such, the requirements pertaining to "independent experts or independent consultants," i.e., delivery of the Protective Order and execution of Exhibit A, do not apply to Mr. Ledbetter. As such, there is no contempt on this count.

### 5. Failing to retain copies of Confidential Information in the offices of outside counsel for the receiving party (Mr. Gilbert)

At Paragraph 7(b), the Protective Order provides that "[c]opies of confidential information shall be maintained only in the offices of outside counsel for the receiving party . . . ." The trial court held Mr. Gilbert in contempt of this provision, to-wit:

Ms. Rickard obtained and signed for, on behalf of Mr. Gilbert, the highly confidential DCS records. Mr. Gilbert's law firm then scanned those documents and sent them, via email, to Mr. Ledbetter. Such conduct is not only appalling; but, it is also a violation of a lawful and clear and unambiguous order. Therefore, Mr. Gilbert is in contempt.

We have previously held that Mr. Ledbetter was a qualified person under the Protective Order and, as such, was entitled to the protected documents at issue. The portion of Paragraph 7(b) applicable here provides that "[a]ny documents . . . that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of such documents shall be made . . . ." Here, there is no evidence that any protected documents were "leaked" or that Mr. Gilbert distributed protected document to anyone other than Mr. Ledbetter, who was a qualified person under the terms of the Protective Order, as discussed above. The record shows that Messrs. Gilbert and Ledbetter retained the copies given to them within their offices (or, in the case of Mr. Ledbetter, on his personal computer). As such, there is no contempt on this count.

### 6. Failing to maintain a log of all copies of Confidential Information delivered to a Qualified Person

At Paragraph 7(c), the Protective Order provides that, "[e]ach party's outside counsel shall maintain a log of all copies of Confidential Information that are delivered to Qualified Persons." At the contempt hearing, Mr. Gilbert proffered two exhibits, Number 4 and Number 14. He testified that Exhibit Number 4 was the log he created concerning the protected documents, to-wit:

Q [to Mr. Gilbert]. Did you maintain a log of confidential information supplied to qualified persons?
A. Yes. I made a memo, because even though we didn't receive discovery from the defense, Judge Johnson's court did receive some DCS records;

- 22 -

had my staff come in, pick those up. They identified with me that the staff was entitled to pick them up, and I then made a memo of who I shared that with.

Q. All right.

MR. TOWNSEND: May I pass up, Your Honor?

THE COURT: Yes, sir.

(Passing document.)

BY MR. TOWNSEND:

Q. Can you identify the document which has been placed in front of you?

A. Yes. It's a copy of my memo documenting some correspondence with the court, and also some of the DCS records that we picked up that we saved and that a copy was submitted to Mr. Ledbetter, his first name is Bureon.

MR. TOWNSEND: Your Honor, we move that introduced as Number 4, please?

THE COURT: Any objection?

MS. SWAFFORD: Your Honor, I—I would object. I don't believe we have proof of the authenticity of this record. It's just—could have been made at any time. There's no date stamp on it to show—I mean, anybody can forward an e-mail to themselves and type this at the top and date it. I would like to see proof of when it was made—electronic proof. So we object to the authenticity without seeing an electronic proof of when it was made.

MR. TOWNSEND: Your Honor, the authenticity is the testimony of the witness.

MS. SWAFFORD: And we would—we would like to have access to the electronic metadata to see when he made this memo. We can't impeach him on it unless we're given access to that. So that's why we object.

*****

MR. TOWNSEND: Yes, Your Honor.

THE COURT: If you would maybe ask him just a few more foundational questions, so that the Court can make a determination as to whether that qualifies, I would appreciate it.

MR. TOWNSEND: All right.

BY MR. TOWNSEND:

Q. Mr. Gilbert, what is—first, what is this document?

A. It is a memo created by me at or near the time of the November 2017 date, so that I would be apprised of orders that were entered and records that were picked up, because most of my cases are in federal court and we had ECF filings, which come across the system that way. I get hundreds of e-mails otherwise, so I copied a few e-mails and put them in memo form so

- 23 -

I'd have a record of it.

Q. All right. And at the bottom is an e-mail from Stacy Green to lawyers, including you. Is that a true copy of an e-mail which was—a printout of an e-mail which was received in your office?

A. Yes.

Q. All right. And the memo at the top of the page, was that authored by you individually?

A. Yes.

Q. And is that indicated by your initials, "JG"?

A. Yes, that's me.

Q. All right. And so is this a true printout of a memo which you did to your file on November 17, 2017?

A. Yes.

Q. And you so state under oath?

A. Yes.

In addition to Exhibit 4, the trial court admitted Exhibit 14, which Mr. Gilbert testified was prepared, at the behest of his counsel, Mr. Townsend, in preparation for the contempt hearing. At the hearing, Mr. Gilbert explained that Mr. Townsend asked him to create a "demonstrative exhibit," "a 'checklist' with numbers," to visually demonstrate to Judge Johnson that the documents she received from Mr. Ledbetter were the same ones supplied to him by Mr. Gilbert. Mr. Gilbert never categorized Exhibit 14 as the "log" he was required to maintain pursuant to Paragraph 7(c) of the Protective Order; rather, he testified that, "It is a chart that I made because [Mr. Townsend] had asked me to actually physically open every one of those attachments sent to Mr. Bureon Ledbetter and compare them with what he had sent to the court. I did that and created the chart. And those are my initials there."

In its order, the trial court conflates Exhibits 4 and 14, to-wit:

At the contempt hearing, Mr. Gilbert produced a document which he claims is the "log" he kept in compliance with Section 7(c) of the Protective Order. This section requires counsel to "maintain a log of all copies of Confidential Information that are delivered to Qualified Persons." The document Mr. Gilbert claims is the "log" is clearly a document written after the fact and is merely a comparison of the documents Mr. Ledbetter submitted with his December 28, 2017 letter to the Court with the documents Mr. Gilbert gave to Mr. Ledbetter. It is merely a check-list that Mr. Gilbert made after Mr. Ledbetter submitted the documents to the Court. It is not a "log" as clearly contemplated by the Protective Order. Mr. Gilbert willfully failed to keep a "log" as required by this Section. Thus, his conduct constitutes contempt.

The record does not support the trial court's finding that Mr. Gilbert failed to maintain a log as required by the Protective Order. In the first instance, the Protective Order does not elaborate on the format of the required "log," nor does the Protective Order mandate a timing requirement for when the log must be prepared. However, we know from Mr. Gilbert's testimony that his memo documenting receipt of the protected documents was made at or near the time he received those documents. So, defense counsel's objection to the validity of Exhibit 4 on the ground of Mr. Gilbert's failure to authenticate the exact date on which he created the memo is not dispositive of the question of whether Mr. Gilbert was in contempt of this provision of the Protective Order. No matter when the "log" was created, no matter its format, the fact remains that Mr. Gilbert complied with the "log" requirement as evidenced by Exhibit 4. As such, there is no contempt on this count.

**7. Failing to comply with his duty to reasonably ensure that any Qualified Person in receipt of confidential information subject to the Protective Order observes the terms of the Protective Order.**

Paragraph 16 of the Protective Order provides that:

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

The trial court held Mr. Gilbert in contempt of this provision: "By failing to provide Mr. Ledbetter with a copy of the Protective Order and failing to make Mr. Ledbetter aware of the Protective Order, Mr. Gilbert willfully violated this Order. Thus he is in contempt."

Turning to the record, on October 3, 2017, the defense filed the agreed Protective Order and sent it to plaintiffs' then-attorney, Mr. Mumford. The Protective Order was not served on Mr. Gilbert, who had filed his Notice of Appearance on October 2, 2017. On October 3, 2017, the day the trial court entered the Protective Order, Mr. Mumford received it by email and then, on the same day, forwarded the order to Messrs. Ledbetter and Gilbert by email. At the contempt hearing, Mr. Gilbert testified that he received Mr. Mumford's email and assumed (because it was also addressed to Mr. Ledbetter) that Mr. Ledbetter did too:

Q. Mr. Gilbert, a pressing issue in this matter concerns--or arises out of testimony of Mr. Bureon Ledbetter on January 31, 2018, to the effect that he had not seen a copy of the court's protective order of October 3, 2017. Could you address that issue?
A. I can. On October 3—that was the first day of our hearing, in which I participated – Judge Johnson signed the order that day. The order she

- 25 -

signed had a certificate of service to Mr. Mumford, it was e-mailed to him October 3. He then turned around and e-mailed to both me and Mr. Ledbetter. And I believe I've provided you a copy of the e-mail showing that.

Q. We'll address that shortly. Are you confident in your own mind that Mr. Ledbetter was furnished a copy of the entered protective order of October 3, 2017?

A. I am, because we had discussed the draft protective order. With the exception of a couple of words that were changed on October 3, it was the same thing. We had gone over it in some detail along with Mr. Mumford and again, the e-mail was sent to him that same day.

In his testimony, which the trial court credited over Mr. Gilbert's,[1] Mr. Ledbetter seems to provide conflicting statements, to-wit: "Your Honor, I have not seen a protective order. I mean, I'm aware there was a protective order for the medical records. . . ." Regardless of whether Mr. Ledbetter, in fact, received the Protective Order by email from Mr. Mumford, Mr. Gilbert's testimony was that based on the fact Mr. Ledbetter was included in the email that Mr. Mumford sent to Mr. Gilbert, he was confident Mr. Ledbetter was in receipt of the Protective Order. Also, the Protective Order that was entered was essentially the same order that Messrs. Ledbetter and Mumford had reviewed earlier and opposed. It is, therefore, not believable that Mr. Ledbetter was not familiar with the terms of the Protective Order as he had sufficient knowledge of its contents to contest its entry. As such, if Mr. Gilbert did fail to personally deliver a copy of the Protective Order to Mr. Ledbetter, his actions were not willful. As explained by the Tennessee Supreme Court:

> In the context of a civil contempt proceeding under Tenn. Code Ann. § 29-2-102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. ***State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust***, 209 S.W.3d at 612. Rather, willful conduct
>
> > consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

[1] Recall that, in its statements made during the December 14, 2017 hearing (and set out in context above), the trial court stated, "Quite frankly, I don't trust [Mr. Ledbetter] . . . ." This statement obviously contradicts the trial court's later credibility finding.

***State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust***, 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. ***United States v. Ray***, 683 F.2d 1116, 1127 (7th Cir.1982); ***City of Dubuque v. Iowa Dist. Ct. for Dubuque County***, 725 N.W.2d 449, 452 (Iowa 2006); ***Utah Farm Prod. Credit Ass'n v. Labrum***, 762 P.2d 1070, 1074 (Utah 1988).

***Konvalinka***, 249 S.W.3d at 357 (footnotes omitted).

From the uncontested facts, Mr. Gilbert had a good-faith belief, based on solid proof (in the form of Mr. Mumford's email) that Mr. Ledbetter had a copy of the Protective Order and was aware of its terms based on his earlier review and opposition to entry of the Protective Order. As such, Mr. Gilbert's alleged failure to provide Mr. Ledbetter a copy of the Protective Order was, at worst, "accidental or inadvertent." ***Id.*** (quoting ***State ex rel. Flowers***, 209 S.W.3d at 612). Furthermore, by its plain language, the purpose of Paragraph 16 of the Protective Order is to ensure that the qualified person "observes the terms of the Protective Order." Here, there is no allegation that Mr. Ledbetter violated the Protective Order.

For these reasons, we conclude that the evidence preponderates against the trial court's factual findings concerning each of the contempt counts against Mr. Gilbert. ***Konvalinka***, 249 S.W.3d at 357 (explaining that we review the trial court's factual findings of civil contempt with a presumption of correctness unless the evidence preponderates otherwise, pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure). Because the evidence does not support the trial court's findings, we conclude that the trial court abused its discretion in holding Mr. Gilbert in contempt of its orders. ***Id.*** at 358. A trial court abuses its discretion when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). Accordingly, we reverse the trial court's October 15, 2018 order finding Mr. Gilbert in contempt.

As punishment for contempt, the trial court ordered Mr. Gilbert to pay defendants' attorney's fees and costs. As set out in its January 31, 2019 order:

> This matter is before the Court regarding the October 1[5], 2018 Order in which the Court found attorney Justin Gilbert in Civil Contempt of Court. As part of that Order, the Court ordered that Justin Gilbert pay the attorneys' fees incurred by Defendants in pursuing the civil contempt claim, including work on the Show Cause Order and preparation for, and attendance at, the January 31, February 1, August 16, August 17, and October 5, 2018 hearings. The Court further ordered that the attorneys for

Defendants submit their fee Affidavits, which they have now done.

     Based on these Affidavits, the Court finds that Justin Gilbert shall pay directly to attorney Elizabeth Russell $28,050 for the fees incurred by Defendants KM1, KM2, and CM; to attorney Philip Irwin $31,492.50 for the fees incurred by Defendants RG, JG, and DG; to attorney Edward Silva $14,100 for the fees incurred by BD, ED, and CD; and to attorneys Thomas A. Swafford and Tara L. Swafford $65,086. Mr. Gilbert shall pay these monies by July 1, 2019.

Because we reverse the trial court's order finding Mr. Gilbert in contempt, we also reverse the trial court's January 31, 2019 order assessing fees against Mr. Gilbert for contempt.

Having reversed the trial court's finding of contempt, its award of attorney's fees and costs against Mr. Gilbert, and its award of $9,085.00 in sanctions and fees against Ms. Doe, and in view of the dismissal of the underlying lawsuit by entry of the trial court's order granting plaintiffs' voluntary nonsuit, there is nothing substantive for the trial court to do on remand. As such, we pretermit the issue of whether the trial court erred in denying recusal. However, should further proceedings be necessary on remand, in view of the history of the case in the trial court and "[g]iven our resolution of this appeal, we conclude 'that reassignment to a different trial judge is advisable to preserve the appearance of justice.'" *State ex rel. Department of Transportation v. Thomas*, No. W2018-01541-COA-R10-CV, 2019 WL 1602011, *8 (Tenn. Ct. App. April 15, 2019) (quoting *Rudd v. Rudd*, No. W2011-01007-COA-R3-CV, 2011 WL 6777030, at *7 (Tenn. Ct. App. Dec. 22, 2011)).

## VI. Conclusion

For the foregoing reasons, we reverse: (1) the trial court's order of June 21, 2018 assessing fees of $9,085.00 against Ms. Doe; (2) the trial court's order of October 15, 2018, holding Mr. Gilbert in contempt; and (3) the trial court's order of January 31, 2019 assessing fees and costs to Mr. Gilbert for the contempt. The trial court's orders are otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion and with instruction that the case, should it proceed, be assigned to a different trial judge. Costs of the appeal are assessed to Appellees, Buddy Alexander, Nancy Brasher, Brentwood Academy, Inc., Lyle Husband, Curt Masters, and Mike Vazquez, for all of which execution may issue if necessary.

 

_____
    KENNY ARMSTRONG, JUDGE